JANIE C. FOSTER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; RONNIE A. WHITFIELD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Foster v. Commissioner
Docket Nos. 24788-87; 25712-87.
United States Tax Court
T.C. Memo 1989-276; 1989 Tax Ct. Memo LEXIS 276; 57 T.C.M. (CCH) 661; T.C.M. (RIA) 89276; June 7, 1989. Michelle S. Marti, for the petitioner Janie C. Foster in docket No. 24788-87. [1]
Jeff Johnson, for the petitioner Ronnie A. Whitfield in docket No. 25712-87. Donna Bice, for the respondent. KORNER
MEMORANDUM *278 FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined deficiencies in petitioners' Federal Income tax and additions to tax as follows: Taxable
Additions to Tax, Section
Year
Deficiency
6653(b)(1) [2]
6653(b)(2)
6661
1981
$ 15,060.12
$  9,969.06 *
-
1982
79,310.25
45,282.63 *
$ 19,827.56
The issues for decision are: (1) Whether funds obtained by Ronnie Whitfield without authorization from his employer during each of the taxable years in issue constitute taxable income; (2) whether petitioners are entitled to a net operating loss carryback to the years in issue from 1983; (3) whether any portion of the underpayment of tax for the years in issue is attributable to fraud; (4) alternatively, whether any understatement was due to negligence or intentional disregard of rules or regulations; (5) whether petitioners are liable for the section *279 6661 addition to tax for substantial understatements of liability in 1982; and (6) whether petitioner Janie C. Foster is entitled to innocent spouse relief pursuant to section 6013(e). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Throughout 1981, 1982, and 1983, petitioners were married to each other and filed joint Federal income tax returns for each of those years. Petitioners were divorced in January 1985. Petitioners were residents of Abilene, Texas, at the time their separate petitions herein were filed. The cases were consolidated for trial, briefing and opinion herein. Mr. Whitfield began employment at L&L, Inc. (L&L) in October 1977. L&L is a Texas-based corporation involved in the oil business. Prior to employment with L&L, Mr. Whitfield had been a field auditor with the National Biscuit Company and has owned and managed several dry cleaning establishments. At L&L, Mr. Whitfield was initially employed as manager of the crude oil department, eventually becoming a company vice president. Ms. Foster has a high school education. During *280 the years at issue, she was employed by a company for which she performed routine bookkeeping and secretarial duties. Her employment was full-time until she assumed part-time status in June 1982. Sometime in 1980, Mr. Whitfield became convinced that L&L's president, Lee Bledsoe, had reneged on promises he had allegedly made with respect to Mr. Whitfield's compensation. Mr. Whitfield therefore decided to take L&L funds to compensate for this perceived slight. As manager of the crude oil department, Mr. Whitfield had access to and control over the records that listed information regarding individuals who were owed money, the company checks with which disbursements were made, and the signature stamp used in writing checks. On January 15, 1981, Mr. Whitfield took two L&L company checks made payable to Charles M. Childers in the amounts of $ 4,579.56 and $ 6,961.45, respectively. These checks were then taken to the Bank of Commerce in Abilene, Texas ("Commerce Bank"), where they were exchanged for cashier's checks payable to "G. W. Foster." The cashier's checks were then endorsed and deposited into an account in the name of "G. W. Foster." Although petitioners have a son Gary Foster, *281 G. W. Foster is a fictitious person. The names of G. W. Foster, Mr. Whitfield and Janie Foster (then Whitfield) were on the signature card as having signature authority over this account. From April 20, 1981 through October 20, 1981, Mr. Whitfield obtained six more L&L checks payable to Mr. Childers totaling $ 41,044.13. In each case, Mr. Whitfield either cashed the checks himself, or had them converted to Commerce Bank cashier's checks made payable to G. W. Foster which he then deposited into the G. W. Foster account. On October 23, 1981, Mr. Whitfield repaid $ 1,054.49 by sending to L&L a cashier's check in that amount which purported to be from Mr. Childers. Ms. Foster was aware of the existence of the G. W. Foster account and wrote several checks against it at her husband's instruction. However, she was under the impression that the account had been established for their son and did not know that the funds in the account had been misappropriated by her husband. Ms. Foster was generally excluded by her husband from knowledge of his financial affairs. Beginning in 1982, Mr. Whitfield began to misappropriate L&L funds through use of its "oil suspense account." The oil suspense *282 account is used to accumulate oil royalties due to payees who are unidentified or cannot be located. If funds in the suspense account cannot be disbursed within seven years, they will escheat to the state. In February 1982, Mr. Whitfield drew four L&L checks totaling $ 239,777.97. These checks were made payable to owners of oil royalties which were owed by L&L. Mr. Whitfield forged the endorsements, and had these checks converted into two bank cashier checks of $ 9,000 and $ 230,777.97 payable to "G. W. Foster." The cashier's checks were then deposited into an account named "Fostex Joint Venture" which Mr. Whitfield had earlier established at the Texas Bank and Trust Company in Sweetwater, Texas. The names on the signature card for the Fostex Joint Venture Account -- G. W. Foster and J. R. Bird -- were both fictitious. Ms. Foster was unaware of the existence of the Fostex Joint Venture Account. In the summer of 1982, Mr. Whitfield resigned from L&L. However, he remained working at L&L without salary in order to monitor any requests for disbursements and thus keep his misappropriations from being discovered. Two individuals, to whom the L&L checks taken in February were payable, *283 were paid $ 69,952.28 by Mr. Whitfield in late October and early November of 1982, when they inquired of L&L about their missing royalties. These amounts represented amounts owing to these individuals from a single lease but did not include amounts they were owed by L&L from other leases. Mr. Whitfield mailed correct Form 1099 and windfall profits tax information to these two individuals to forestall discovery of the missing funds. Mr. Whitfield invested approximately $ 218,000 of the funds he misappropriated in gold and silver. Approximately $ 44,645 was placed in interest bearing accounts. The gold and silver investments generated approximately $ 47,922 of profits which were reported as income on petitioners' 1982 joint return. During the years 1981 and 1982, petitioners spent approximately $ 75,000 on personal items. These included approximately $ 48,395 of home and farm improvements; over $ 5,000 in home appliances; contributions to Individual Retirement Accounts; purchase of a 1980 Olds Cutlass automobile; purchase of a 1982 pick-up truck and a horse trailer; a vacation trip to Las Vegas; membership in various social clubs; and prepayment of principal on their home mortgage. *284 Petitioners had combined income of $ 12,866 in 1978; $ 20,324 in 1979; and $ 27,660 in 1980. Mr. Whitfield explained to Ms. Foster that the increased family income during 1981 and 1982 was due to his moonlighting activities as a "landman." [3] Ms. Foster believed Mr. Whitfield's explanations. Mr. Whitfield's scheme began to unravel in late December of 1982 when he was unable to intercept a phone call to L&L from one of the royalty owners whom he had paid in October and November, inquiring about the remaining amounts owed by L&L. L&L officials soon discovered the missing funds and criminal charges were filed against Mr. Whitfield in January 1983. Mr. Whitfield's misappropriation of funds from L&L received substantial attention in the local media at that time. Petitioners cooperated with authorities and endeavored to make restitution for the funds which had been taken by Mr. Whitfield from his employer without authorization. Petitioners repaid $ 125,000 of these funds on or about April 1, 1983. On or about July 1, 1983, petitioners made restitution in an amount equal *285 to the fair market equity value of their house and farm by deeding the house and farm to Don Maples, Trustee (for the benefit of L&L and Commerce Bank). At that time petitioners had net equity in the house and farm of approximately $ 92,000. Petitioners thus made restitution of all but approximately $ 8,000 of the funds misappropriated by Mr. Whitfield. Mr. Whitfield was thereafter released from any further obligation to make restitution. Ms. Foster was in attendance at Mr. Whitfield's state court proceeding in July 1983, at which he was convicted of the theft of the L&L funds, pursuant to a plea of nolo contendere. Ms. Foster had obtained an extension of time until October 15, 1982, within which to file petitioners' 1981 Federal income tax return. Petitioners were contacted by respondent's agent in May or June 1983. Petitioners did not file their 1981 and 1982 tax returns until December 8, 1983, after an IRS audit was in process. These returns were prepared for petitioners by Bobbie Lee Wolfe, C.P.A. Attached to these returns, were statements that the $ 52,585.14 taken from L&L in 1981 and the $ 239,777.97 taken in 1982 were borrowed. The statements do not indicate that the *286 taking of the funds was unauthorized. Mr. Wolfe was following the instructions of Mr. Whitfield when he characterized the L&L funds in this manner. In his statutory notice of deficiency, respondent determined that the amounts described in the attachments to petitioners' returns were theft income and not loans. The 1982 total was then reduced to $ 69,825.68 to reflect monies restored to L&L in that year. Respondent also determined that the deficiencies were due to fraud. Alternatively, he determined that the additions to tax under section 6651(a)(1) for failure to file timely returns and sections 6653(a)(1) and (2) for negligence were applicable. Finally, he determined that the section 6661 addition to tax for substantial understatements was applicable in 1982. [4]
OPINION Embezzlement Income The first issue for decision is whether petitioners realized unreported taxable income as a result of Mr. Whitfield's unauthorized conversion of L&L funds. Petitioners bear the burden of proof on this issue. *287 Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). It is well established that a taxpayer who receives monies under a claim of right and without restriction as to disposition must include such monies in gross income. North American Oil Consolidated v. Burnet,286 U.S. 417, 424 (1932). Embezzled funds are included in the gross income of the embezzler in the year in which the funds are misappropriated. James v. United States,366 U.S. 213, 219-220 (1961). To the extent the embezzler makes restitution of the misappropriated funds, at least in the year of taking, there is a reduction in income. James v. United States, supra at 220. Petitioners contend that Mr. Whitfield at all times intended to repay the embezzled funds and that they do not constitute embezzlement income. They argue that Mr. Whitfield borrowed sufficient funds to generate investment income equal to the amount he felt he was owed by L&L, but that he had no intention of keeping the principal. They contend that he must have intended repayment since he knew his unauthorized taking would come to light when the persons entitled to payment by L&L *288 came forward or, at the latest, when the funds escheated to the State of Texas if unclaimed for seven years. Petitioners' arguments are unpersuasive. We agree that the James rationale does not apply where there is a "consensual recognition" of an obligation to repay. James v. United States,366 U.S. at 219. See also Gilbert v. Commissioner,552 F.2d 478, 480 (2d Cir. 1977), revg. a Memorandum Opinion of this Court. Here, however, we have no evidence of such a "consensual recognition" other than Mr. Whitfield's own self-serving testimony. It is difficult to see how consensual recognition of an obligation to repay money could have existed when the party from whom the money was taken was unaware of its absence. Mr. Whitfield did not acknowledge his obligation to replace his unauthorized takings until they were discovered. Petitioners' argument that Mr. Whitfield must have intended to repay the misappropriated funds since they would eventually be missed is unpersuasive. By this logic, no thief would ever be chargeable with theft income since he could argue that he believed that the stolen funds would someday be missed and his theft discovered *289 and he thus would be called upon to make restitution. Petitioners' reliance on Gilbert v. Commissioner, supra is misplaced. In Gilbert, the Court held that certain unauthorized withdrawals of corporate funds made by the taxpayer did not constitute taxable income. The taxpayer in Gilbert was president, principal stockholder, and a director of a corporation from which he withdrew $ 1,958,000 without authorization. The funds were withdrawn in an attempt to effectuate a merger which would have been highly favorable to both the taxpayer and the corporation. To obtain relief under Gilbert, a taxpayer must recognize the obligation to repay at the time the funds are received. Gilbert v. Commissioner,552 F.2d at 481 n. 8. In this case, there is no evidence other than Mr. Whitfield's own self-serving testimony that his recognition of an obligation to repay arose at any time prior to detection of his embezzling scheme. Also, in Gilbert the taxpayer sought the funds to benefit the corporation as well as himself. He made clear his lack of intent to retain the funds by immediately informing several of the corporation's officers and directors *290 and by making a complete accounting to them within two weeks. Here Mr. Whitfield had no intention of using the misappropriated funds to benefit L&L. He engaged in an elaborate scheme to conceal his actions from L&L and only accounted for the missing funds when his scheme unraveled. Nor does Ocean Sands Holding Corp. v. Commissioner,T.C. Memo. 1980-423, provide any aid to petitioners. Oceans Sands involved the unauthorized taking of funds from a family corporation by two of the children on November 7, 1974. Within one week of the misappropriation, the children (in the company of their parents) began the withdrawal of the funds from the bank accounts in which it had been deposited. Most of the funds were withdrawn by the end of 1974 and the balance in 1975. The funds were used to construct an addition to the motel owned by the corporation from which the funds had been taken. Thus, unlike the case before us, Ocean Sands involved an almost immediate consensual recognition of an obligation to repay and actual repayment in the year of misappropriation. Accordingly, that case is also distinguishable. Petitioners also argue that there were restrictions on *291 Mr. Whitfield's disposition of the embezzled funds since he allegedly planned to keep only the income earned therefrom and to return the principal. Suffice it to say that a self-imposed restriction is no restriction at all. Since Mr. Whitfield told no one of his unauthorized takings, he could dispose of the proceeds as he pleased. Therefore, we find that the embezzlement proceeds constituted taxable income in the year of receipt. Net Operating Loss Carryback In their separate answers, petitioners contended that Mr. Whitfield's embezzlement activities constituted a trade or business and the repayments made in 1983 gave rise to a net operating loss carryback of $ 209,540, which resulted in an overpayment in 1981 and a reduced deficiency in 1982. Mr. Whitfield did not file post-trial briefs and this issue is mentioned only in passing in Ms. Foster's reply brief. We therefore consider petitioners' position with regard to this issue to have been abandoned. In any case, we have previously held that embezzlement activities do not constitute a trade or business as required by section 177(d)(4) and thus restitution cannot give rise to a net operating loss carryback. *292 Mannette v. Commissioner,69 T.C. 990, 992-994 (1978); Yerkie v. Commissioner,67 T.C. 388, 393 (1976). See also McKinney v. United States, an unreported case ( W.D. Tex., 38 AFTR 2d 76-6098, 76-2 USTC par. 9728), affd. 574 F.2d 1240 (5th Cir. 1978). [5]
Fraud Respondent determined that each petitioner is liable for the addition to tax under sections 6653(b)(1) and (b)(2). The burden of proof is upon respondent to establish by clear and convincing evidence that at least part of an underpayment of tax for each of the years in issue was due to petitioners' fraud with intent to evade tax. Sec. *293 7454(a); Marcus v. Commissioner,70 T.C. 562, 577 (1978), affd. 621 F.2d 439 (5th Cir. 1980); Stone v. Commissioner,56 T.C. 213, 220 (1971); Rule 142(b). To prove fraud, respondent must show that petitioners acted with specific intent to evade a tax believed to be owing. Mitchell v. Commissioner,118 F.2d 308, 310 (5th Cir. 1941); Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). The existence of fraud is a question of fact to be determined upon consideration of the entire record. Stratton v. Commissioner,54 T.C. 255, 284 (1970). Because direct proof of an intent to defraud is seldom possible, respondent's burden may be met with circumstantial evidence. Spies v. United States,317 U.S. 492, 499 (1943). However, fraud is never presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Respondent must carry his burden separately with respect to each petitioner. Stone v. Commissioner, supra at 227. Therefore, we will discuss the fraud addition separately with respect to each of them. We find that respondent clearly and convincingly *294 proved that petitioner Whitfield underpaid his taxes for the years in issue and that the entire underpayment for each year was due to fraud. The evidence clearly establishes that Mr. Whitfield received income as the result of his embezzlement scheme which was not reported. Mr. Whitfield engaged in an elaborate scheme to misappropriate his employer's funds through misrepresentation and concealment. It is a fair inference that someone who would embezzle from his employer will conceal such receipts from the government with intent to evade taxes. McGee v. Commissioner,61 T.C. 249, 260 (1973), affd. 519 F.2d 1121 (5th Cir. 1975). Although failure to file returns in and of itself is not proof of fraud, Kotmair v. Commissioner,86 T.C. 1253, 1261 (1986), Mr. Whitfield's failure to file returns for the years in issue until after his scheme had been uncovered, supports a finding that he possessed the requisite fraudulent intent. Rowlee v. Commissioner, supra at 1124. The fact that he characterized the funds taken from L&L as loan proceeds (and thus not income) on the returns when they were filed, without mentioning that *295 the alleged "loans" were unauthorized, lends further support to our conclusion that Mr. Whitfield fraudulently intended to evade taxes he knew to be owing. Mr. Whitfield is thus liable for the addition to tax for fraud for 1982 as determined by respondent. With respect to 1981, however, respondent's notice of deficiency is in error. Section 6653(b)(2) which estabishes an additional addition to tax equal to 50 percent of the interest due on the portion of the understatement attributable to fraud is applicable only with respect to taxes the last day for payment of which (without regard to extensions) is after September 3, 1982. Pub. L. 97-248, sec. 325(a)(4)(b), 96 Stat. 324. Thus the addition to tax with respect to the 1981 underpayment is limited to 50 percent of the underpayment. With respect to Ms. Foster, we find that respondent has failed to meet his burden of establishing by clear and convincing evidence that she is liable for the 6653(b) fraud addition. Ms. Foster was unaware of her husband's embezzlements until after he had been arrested. She testified credibly that she believed his explanation that the increase in family funds during the years at issue was attributable *296 to his moonlighting as a landman. She also testified credibly that she trusted that her husband and their accountant had properly reflected the embezzlement proceeds in the joint returns she signed at their behest after her husband's arrest and conviction. Mr. Whitfield largely excluded Ms. Foster from knowledge of his financial affairs. We conclude, infra, that Ms. Foster should have known that the returns filed were fraudulent; however, respondent has failed to provide clear and convincing evidence that she actually knew the returns were fraudulent. Without proof of actual knowledge, respondent cannot show that Ms. Foster possessed the requisite fraudulent intent. See and compare Malandro v. Commissioner,T.C. Memo. 1989-135; Turner v. Commissioner,T.C. Memo. 1988-339. Since no personal fraudulent conduct has been proven as to Ms. Foster, she is not liable for any portion of the fraud addition attributable to Mr. Whitfield's conduct. Stone v. Commissioner, supra at 227; sec. 301.6653-1(f), Proced. & Admin. Regs. Since we have found that the section 6653(b) fraud addition applies to the underpayment, we need not *297 address respondent's alternative position that petitioners were negligent under sections 6653(a)(1) and (2) and are liable under section 6651(a)(1) for failing to file timely returns. See sec. 301.6653-1(b)(2), Proced. & Admin. Regs. Substantial Understatement Addition Respondent also determined that there was a substantial understatement of income tax in 1982 and that petitioners, therefore, are subject to an addition to tax equal to 25 percent of the underpayment attributable to such understatement pursuant to section 6661. Pallottini v. Commissioner,90 T.C. 498 (1988). An understatement is substantial if it exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the return. The amount of the understatement is reduced for section 6661 purposes by the portion of the understatement which is attributable to the taxpayer's treatment of an item for which there was "substantial authority," or if the relevant facts affecting the item's tax treatment are "adequately disclosed" on the return or in a statement attached thereto. Sec. 6661 (b)(2)(B)(i) and (ii). Petitioners argue that the relevant facts affecting the treatment of the *298 embezzlement proceeds were adequately disclosed on the statement attached to the returns. We disagree. Section 1.6661-4(b), Income Tax Regs., specifies the form and content requirements for disclosure on an attached statement. Section 1.6661-4(b)(1)(iv), Income Tax Regs., requires that the statement include the facts affecting the tax treatment of the item that "reasonably may be expected to apprise the Internal Revenue Service of the nature of the potential controversy." The statements attached to petitioners' returns characterized the funds taken from L&L by Whitfield as borrowed. No mention is made of the fact that these "borrowings" were unauthorized (i.e., embezzled). The statements were thus designed to obfuscate rather than apprise respondent of the potential controversy. Accordingly, we find petitioners liable for the addition to tax under section 6661 for 1982. Innocent Spouse A husband and wife who choose to make a joint return are jointly and severally liable for the tax due on their aggregate income. Sec. 6013(d)(3). However, section 6013(e) provides that a spouse may be relieved of joint and several liability in certain circumstances. The final issue for decision *299 is whether Ms. Foster meets the requirements for innocent spouse relief under 6013(e). In order to qualify for innocent spouse relief, Ms. Foster must show: (1) that joint returns were filed for the years in issue; (2) that on the joint returns there were substantial understatements of tax attributable to omissions of gross income of Mr. Whitfield; (3) that in signing the returns, Ms. Foster did not know and had no reason to know of the substantial understatements; and finally (4) that taking into account all of the facts and circumstances, it would be inequitable to hold Ms. Foster liable for the deficiencies attributable to the substantial understatements. Sec. 6013(e)(1). Ms. Foster bears the burden of establishing that she has satisfied each statutory requirement for relief under section 6013(e). Sonnenborn v. Commissioner,57 T.C. 373, 381-383 (1971); Rule 142(a). It has been stipulated that joint returns were filed for each year in issue, and we are satisfied that such returns contained substantial understatements due to the omission of Mr. Whitfield's embezzlement proceeds from gross income. The conditions of subparagraphs (A) and (B) of section 6013(e)(1) *300 have thus been met. However, Ms. Foster has failed to prove that in signing the joint returns she had no reason to know of the substantial understatements contained therein, as required by section 6013(e)(1)(C). The test to determine whether Ms. Foster had reason to know of the substantial understatements in the returns she signed is whether a reasonably prudent person, possessed of the same experience and temperament as Ms. Foster, should have known of the understatements. Sanders v. United States,509 F.2d 162, 167 (5th Cir. 1975); Terzian v. Commissioner,72 T.C. 1164, 1170 (1979). We have found that Ms. Foster had no actual knowledge of the substantial understatements when she signed the returns in question. She relied on the assurances of her husband and their accountant that the treatment of the embezzled funds as loan proceeds was proper or at least colorable. However, Ms. Foster was not entitled to close her eyes to the many facts which should have put her on notice that the embezzlement proceeds constituted reportable income. *301 Mysse v. Commissioner,57 T.C. 680, 699 (1972). At the time she signed the returns she knew Mr. Whitfield had lied to her and that the increased family income during the years in question was not attributable to his moonlighting. She knew that he had stolen the money from his employer and had been convicted of the theft. A reasonably prudent person would have been highly sceptical of Mr. Whitfield's explanations at this point. Although not unsympathetic with Ms. Foster's plight, we must conclude that at the time she signed the returns, she possessed sufficient information from which a person of ordinary intelligence could infer that substantial understatements existed. Ms. Foster has thus failed to meet the requirements of section 6013(e)(1)(C) and is thus ineligible for innocent spouse relief. To reflect the foregoing, Decisions will be entered under Rule 155.
Footnotes
1. Ms. Marti was originally counsel to both petitioners in both dockets. On August 5, 1988, her motion to withdraw as counsel for petitioner Ronnie Whitfield in docket No. 25712-87 was granted. Mr. Johnson's entry of appearance as counsel for Mr. Whitfield was filed on October 31, 1988.↩
2. All statutory references are to the Internal Revenue Code, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. * 50 percent of the interest due on the entire deficiency.↩
3. A landman is a person who secures leases from property owners in order to allow oil or gas exploration.↩
4. Respondent also made automatic adjustments to petitioners' itemized deduction for medical expenses to reflect the determined increase in adjusted gross income.↩
5. Under sec. 165(c)(2), an embezzler is entitled to deduct the repayment of embezzled funds from adjusted gross income in the year repayment is made. Norman v. Commissioner,407 F.2d 1337 (3d Cir. 1969); Yerkie v. Commissioner,67 T.C. 388, 392-394 (1976). Petitioners therefore are entitled to deduct the $ 1,054.49 restored in 1981 and the $ 69,952.29 paid in 1982 in those years. Although 1983 is not before us, repayments made in that year appear likewise deductible under sec. 165(c)(2)↩.