**Jon T. STEPHENS and Susanne Stephens, Petitioners–Appellants,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**No. 824, Docket 89–4116.**

United States Court of Appeals, Second Circuit.

Argued Feb. 9, 1990.

Decided June 11, 1990.

Richard B. Cooper, New York City (Stanley C. Ruchelman, Steven C. Greene, Cooper, Brown & Behrle, New York City, on the brief), for petitioners-appellants.

Teresa E. McLaughlin, Washington, D.C. (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Jonathan S. Cohen, Washington, D.C., on the brief), for respondent-appellee.

Before NEWMAN and ALTIMARI, Circuit Judges, and CONBOY, District Judge.*

* The Honorable Kenneth Conboy of the District Court for the Southern District of New York, sitting by designation.

CONBOY, District Judge:

Petitioners Jon T. Stephens and Susanne Stephens [1] appeal from the decision of the Tax Court, *Stephens v. Commissioner*, 93 T.C. 108 (1989), determining a deficiency in their federal income tax for the year 1984 in the amount of $28,397.34. The sole issue before us on appeal is whether the Tax Court correctly determined that Stephens was not entitled to a loss deduction, pursuant to Section 165 of the Internal Revenue Code of 1954, 26 U.S.C. § 165 (1982), [2] for a restitution payment he made in 1984 to the Raytheon Company ("Raytheon"), on the ground that allowance of the deduction would frustrate public policy.

## BACKGROUND [3]

In September of 1981, Stephens and other defendants were indicted for participating in a scheme to defraud Raytheon, a Delaware corporation doing business in the United States and in foreign countries. Following a jury trial, Stephens was convicted in December of 1982 of four counts of wire fraud, in violation of 18 U.S.C. § 1343; one count of transportation of the proceeds of fraud in interstate commerce, in violation of 18 U.S.C. § 2314; and one count of conspiracy in violation of 18 U.S.C. § 371.

Stephens was sentenced on December 3, 1982. Before sentence was pronounced, the Assistant United States Attorney recommended to the court that Stephens be ordered to make restitution to the Raytheon Company. Pointing out that the funds which Stephens had embezzled from the Raytheon Company were frozen in a bank account in Stephens' name in Bermuda, the prosecution suggested that, in addition to whatever custodial and fine requirements the court decided to impose, it sentence Stephens to an additional consecutive period of incarceration and suspend that additional incarceration on condition that restitution to the Raytheon Company be made.

In pronouncing sentence, the sentencing judge agreed that Stephens ought to make restitution to Raytheon. After emphasizing that she "believe[d] a period of imprisonment is absolutely necessary in this case not only for the protection of the public but because we cannot ignore the seriousness of the crimes for which you stand convicted," and "that [Stephens was among] the most culpable," the judge added, "Now, this Court does believe that Raytheon must get its money back. I'm just firmly convinced of that.... I can and shall require restitution from the principals of the [the corporate defendant] because you, in my view, the principals ... defrauded Raytheon.... I'm going to see to it that you give Raytheon its money back."

On each of the counts of wire fraud, Stephens was sentenced to a concurrent 5–year prison term and a $1,000 fine. On the conspiracy count, he was sentenced to a concurrent prison term of 5 years and a $10,000 fine. On the count of interstate transportation of the proceeds of fraud, Stephens was sentenced to a consecutive 5–year prison term and a $5,000 fine; execution of this consecutive prison term, but not the fine, was suspended, and Stephens was placed on 5 years of probation, on the condition that he make restitution to Raytheon in the amount of $1,000,000.

The $1,000,000 represented $530,000 in principal, the amount which was initially embezzled from Raytheon, and $470,000 in interest. Stephens was taxed upon his receipt of the $530,000 in 1976. [4] In 1984, as

---

**1.** Jon T. Stephens' wife, Susanne Stephens, is a party to this action because she filed a joint income tax return with her husband for the year in question. Because the operative facts concern only Jon T. Stephens, our references to "Stephens" allude to him.

**2.** Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, 1984. The Code has since been redesignated as the Internal Revenue Code of 1986. *See*

Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085 (1986).

**3.** Pursuant to Tax Court Rule 122, the parties stipulated to the relevant facts, which were found accordingly by the Tax Court.

**4.** On August 24, 1988, in a stipulated decision in a related matter before the Tax Court, Stephens and the Commissioner entered into an agreement to settle the deficiency determined for the

part of a settlement agreement with Raytheon in connection with two civil actions Raytheon had brought against Stephens, Stephens turned over to Raytheon the $530,000 fund, and executed a $470,000 promissory note, representing the interest. In an Amended 1984 Tax Return, Stephens claimed as a deduction the $530,000 restitution payment. The Commissioner denied this deduction, and Stephens appealed.

In the Tax Court, Stephens contended that the restitution payment was a deductible loss under Section 165.[5] The Commissioner argued that deduction of the payment was barred by Section 162(f).[6] *Stephens*, 93 T.C. at 111. In the alternative, the Commissioner argued that if deductibility was governed by Section 165, rather than by Section 162(f), the deduction of the court-ordered restitution was precluded on public policy grounds. *Id.* The Commissioner also contended that the repayment constituted a personal expense, deductibility of which is barred by Section 262, and that, in any event, Stephens had not established a loss, because he was entitled to seek contribution from his fellow defendants. *Id.*[7]

The Tax Court determined that the allowability of the deduction for the restitution payment was governed by Section 165. In the court's view, such a payment constituted a loss in a "transaction entered into for profit" under Section 165(c)(2), rather than an "ordinary and necessary business expense" described in Section 162(a). *Id.* Because the deductibility of the payment

was not governed by Section 162, the court concluded that Section 162(f), which precludes the deduction of fines and similar penalties as trade or business expenses, was also inapplicable. *Id.* at 112. Nevertheless, the court determined that the public policy considerations embodied in Section 162(f) were relevant in determining whether the payment to Raytheon was deductible under Section 165, reasoning that "it does not follow that the standards, which have been established for the application of section 162(f) to payments which would otherwise be allowable under section 162(a), should not be utilized to determine whether a taxpayer should be denied a deduction for a payment which might otherwise be allowable under section 165(c)(2)." *Id.*

The Tax Court then considered whether the restitution payment made by Stephens was equivalent to "any fine or similar penalty paid to a government for the violation of any law" within the meaning of Section 162(f). As an initial matter, the court determined that "the fact that the payment in question was made to a private person as restitution rather than to a Government agency in and of itself does not preclude the application of section 162(f)." *Id.* at 113 (citing *Waldman v. Commissioner*, 88 T.C. 1384, 1389 (1987), *aff'd*, 850 F.2d 611 (9th Cir.1988)). The court found significant the definition of "fine or similar penalty" in Section 1.162–21(b)(1)(i) of the Treasury Regulations on Income Tax (26 C.F.R.), as

---

taxable year 1976, based on Stephens' receipt of the funds in 1976. *Stephens*, 93 T.C. at 110.

5. Section 165, "Losses," provides, in relevant part:
 (a) General rule.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.
 * * * * * *
 (c) Limitation on losses of individuals.—In the case of an individual, the deduction under subsection (a) shall be limited to—
 * * * * * *
 (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business....
 26 U.S.C. § 165 (1982).

6. Section 162, "Trade or business expenses," provides, in relevant part:
 (a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business....
 * * * * * *
 (f) Fines and penalties.—No deduction shall be allowed under subsection (a) for any fine or similar penalty paid to a government for the violation of any law.
 26 U.S.C. § 162 (1982).

7. In light of its disposition of the case, the Tax Court did not find it necessary to consider these alternative grounds asserted by the Commissioner for disallowing the deduction. Accordingly, these alternative grounds are not before us, and we do not consider them.

including an amount "[p]aid pursuant to conviction or a plea of guilty or *nolo contendere* for a crime (felony or misdemeanor) in a criminal proceeding." *Id.* Although the court acknowledged that the payment "had the effect of reimbursing Raytheon for all or part of its loss and, therefore, had a civil aspect," it determined that "[t]he reimbursement-of-loss aspect was merely incidental to the consequences of [taxpayer's] criminal activities." *Id.* Emphasizing that the payment "was ordered in lieu of an additional prison term and as a condition of probation," *id.*, the court concluded that the restitution payment was not a deductible loss under Section 165(c)(2). *Id.*

Stephens appeals from the Tax Court's interpretation of the public policy exception to deductibility under Section 165. Stephens argues that allowing the deduction would not "severely and immediately frustrate" a "sharply defined national or state policy," the test for nondeductibility on public policy grounds under Section 165. Moreover, Stephens asserts, disallowing the deduction results in a tax on his gross income, whereas Congress intended the income tax to be a tax on net income. Finally, Stephens argues that, even assuming Section 162(f) is relevant to deductibility of losses under Section 165, the Tax Court mischaracterized the restitution payment as a fine or similar penalty paid to the government. Because we agree that allowing the deduction would not severely and immediately frustrate a sharply defined national or state policy, we reverse the decision of the Tax Court, and remand for further proceedings.

## DISCUSSION

As Stephens and the Commissioner agree, Stephens' restitution payment is deductible, if at all, pursuant to Section 165(c)(2) of the Tax Code, which permits an individual to deduct any uncompensated loss sustained during the taxable year, incurred in any transaction entered into for profit, though not connected with a trade or business. 26 U.S.C. § 165(c)(2). Indeed, "[t]he decided cases establish that a resti-

tution payment, such as is involved herein, is not an 'ordinary and necessary' business expense as required by section 162(a) but rather gives rise to a loss in a 'transaction entered into for profit' under section 165(c)(2)." *Stephens*, 93 T.C. at 111 (citing *Mannette v. Commissioner*, 69 T.C. 990, 992–94 (1978)). Deductions under Section 165 have been disallowed by the courts, however, where "the allowance of a deduction would 'frustrate sharply defined national or state policies proscribing particular types of conduct'...." *Commissioner v. Tellier*, 383 U.S. 687, 694, 86 S.Ct. 1118, 1122, 16 L.Ed.2d 185 (1966) (quoting *Commissioner v. Heininger*, 320 U.S. 467, 473, 64 S.Ct. 249, 253, 88 L.Ed. 171 (1943)). Thus, "the 'test of nondeductibility always is the severity and immediacy of the frustration resulting from allowance of the deduction.' " *Id.* (quoting *Tank Truck Rentals, Inc. v. Commissioner*, 356 U.S. 30, 35, 78 S.Ct. 507, 510, 2 L.Ed.2d 562 (1958)).

For example, in *Tellier*, the Tax Court disallowed a deduction for expenses incurred in the unsuccessful defense of a criminal prosecution. This Court reversed, and the Supreme Court affirmed. Emphasizing that "the 'policies frustrated must be national or state policies evidenced by some governmental declaration of them,' " *id.* (quoting *Lilly v. Commissioner*, 343 U.S. 90, 97, 72 S.Ct. 497, 501, 96 L.Ed. 769 (1952)), the Court concluded that "[n]o public policy is offended when a man faced with serious criminal charges employs a lawyer to help in his defense." *Id.* On the other hand, in *Tank Truck Rentals, Inc. v. Commissioner*, 356 U.S. 30, 78 S.Ct. 507, 2 L.Ed.2d 562 (1958), the Supreme Court affirmed the disallowance of a deduction of fines paid by a trucking company for violations of state maximum weight laws. *Id.* at 35–36, 78 S.Ct. at 510. In determining the deductibility of the fines, the Court recognized the need to strike a balance between "the congressional intent to tax only net income, and the presumption against congressional intent to encourage violation of declared public policy." *Id.* at 35, 78 S.Ct. at 510. Despite the resulting tax on gross income, the Court disallowed the deduction, observing that "[d]eduction

of fines and penalties uniformly has been held to frustrate state policy in severe and direct fashion by reducing the 'sting' of the penalty prescribed by the state legislature." *Id.* at 35–36, 78 S.Ct. at 510 (footnote omitted).[8]

Although *Tellier* and *Tank Truck Rentals* were both decided pursuant to Tax Code provisions relating to business expenses, the test for nondeductibility enunciated in those opinions is applicable to loss deductions under Section 165.[9] Accordingly, the issue before us is whether a deduction for Stephens' restitution payment of embezzled funds to Raytheon so sharply and immediately frustrates a governmentally declared public policy that the deduction should be disallowed.

■ We note at the outset that "the federal income tax is a tax on net income, not a sanction against wrongdoing.... [T]he statute does not concern itself with the lawfulness of the income that it taxes. Income from a criminal enterprise is taxed at a rate no higher and no lower than income from more conventional sources." *Commissioner v. Tellier*, 383 U.S. at 691, 86 S.Ct. at 1120. Thus, taxpayers who repay embezzled funds are ordinarily entitled to a deduction in the year in which the funds are repaid. *See Norman v. Commissioner*, 407 F.2d 1337, 1338 (3d Cir.), *cert. denied*, 395 U.S. 947, 89 S.Ct. 2021, 23 L.Ed.2d 465 (1969); *Foster v. Commissioner*, 57 T.C.M. (CCH) 661, 665 n. 5 (1989); *Yerkie v. Commissioner*, 67 T.C. 388, 392–94 (1976); *Fox v. Commissioner*, 61 T.C. 704, 715 (1974); *Mais v. Commissioner*, 51 T.C. 494, 499 (1968). Clearly, no public policy would be frustrated if a restitution

payment unrelated to a criminal prosecution were at issue; Stephens would be entitled to a deduction for repaying the embezzled funds to Raytheon.

■ The Commissioner, however, argues that because Stephens made the restitution payment in lieu of punishment, the deduction should be disallowed. Emphasizing that the sentencing judge suspended the consecutive 5–year sentence on the condition that Stephens make restitution to Raytheon, the Commissioner contends that allowing Stephens a deduction for the restitution payment would take "the sting" out of Stephens' punishment, and therefore would sharply and immediately frustrate public policy. *See Tank Truck Rentals*, 356 U.S. at 35–36, 78 S.Ct. at 510. Because Stephens has already paid taxes on the embezzled funds in his 1976 tax return, however, disallowing the deduction for repaying the funds would in effect result in a "double sting." If the deduction were disallowed, Stephens would pay approximately $30,000 in taxes on income he did not retain, in addition to the restitution payment. The sentencing judge made no reference to these tax consequences at the sentencing hearing. Moreover, Stephens received a stern sentence: he was sentenced to five years in prison, and fined a total of $16,000 —the $5,000 fine which accompanied the suspended consecutive sentence was not, as we have noted, suspended. We believe that allowing Stephens a deduction for his restitution payment would not severely and immediately frustrate public policy.

However, having reviewed the cases that have sought to elucidate the meaning and

---

**8.** Courts have applied the public policy exception to deductibility in various circumstances. *See Commissioner v. Sullivan*, 356 U.S. 27, 29, 78 S.Ct. 512, 514, 2 L.Ed.2d 559 (1958) (expense deduction allowed for rent and wages paid by the operators of a gambling enterprise); *Lilly v. Commissioner*, 343 U.S. 90, 97, 72 S.Ct. 497, 501, 96 L.Ed. 769 (1952) (expense deductions allowed to opticians for amounts paid to doctors who prescribed the eyeglasses that the opticians sold); *Wood v. United States*, 863 F.2d 417, 421 (5th Cir.1989) (no loss deduction for forfeiture of contraband and equipment seized from drug trafficker); *United States v. Algemene Kunstzijde Unie, N.V.*, 226 F.2d 115, 118 (4th Cir.1955) (no

loss deduction for forfeiture of property under the Trading with the Enemy Act), *cert. denied*, 350 U.S. 969, 76 S.Ct. 433, 100 L.Ed. 841 (1956); *Fuller v. Commissioner*, 213 F.2d 102, 106 (10th Cir.1954) (no loss deduction for cost of whiskey confiscated by law enforcement agencies); *Blackman v. Commissioner*, 88 T.C. 677, 682 (1987) (no loss deduction to individual who intentionally set fire to his residence for losses resulting from fire), *aff'd in an unpublished order*, 867 F.2d 605 (1st Cir.1988).

**9.** See, for example, the "loss deduction" cases cited in footnote 8, *supra*.

scope of the public policy exception under Section 165, and finding them insufficiently decisive, we turn next to Section 162, the Tax Code provision on deductibility of business expenses, as an aid in applying Section 165. Prior to the codification of the public policy exception to deductibility of business expenses, the test for nondeductibility of business expenses and losses was the same: whether the deduction would severely and immediately frustrate a sharply defined national or state policy proscribing particular types of conduct, evidenced by some governmental declaration thereof. In 1969, Congress codified this public policy exception to deductibility of expenses in Section 162 of the Code, limiting the exception to: illegal bribes, kickbacks, and other illegal payments (subsection 162(c)); fines or similar penalties paid to a government for the violation of any law (subsection 162(f)); and a portion of treble damage payments under the antitrust laws (subsection 162(g)). Congress intended these "provision[s] for the denial of the deduction for payments in these situations which are deemed to violate public policy ... to be all inclusive. Public policy, in other circumstances, generally is not sufficiently clearly defined to justify the disallowance of deductions." S.Rep. No. 552, 91st Cong., 1st Sess., *reprinted in* 1969 U.S.Code Cong. & Admin.News 2027, 2311 (hereinafter S. Rep. 552).

The public policy exception to deductibility under Section 165 was not explicitly affected by the amendments to Section 162. The Internal Revenue Service summarized its view on the impact of the amendments in a Revenue Ruling:

Congress codified and limited the public policy doctrine in the case of ordinary and necessary business expenses by amending section 162(c) of the Code, adding section 162(f) and (g) in the Tax Reform Act of 1969 ..., and amending section 162(c) in the Revenue Act of 1971....

\* \* \* \* \* \*

However, the rules for disallowing a deduction under section 165 of the Code on the grounds of public policy were not limited by Congress but remain the same as they were before 1969. Therefore, disallowance of deductions under section 165 is not limited to amounts of a type for which deduction would be disallowed under section 162(c), (f), and (g) and the regulations thereunder in the case of a business expense.

Rev. Rul. 77–126, 1977–1 C.B. 47, 48. The Tax Court, however, announced a different view: "[t]here is some question whether the public policy doctrine retains any vitality since the enactment of sec. 162(f)." *Medeiros v. Commissioner*, 77 T.C. 1255, 1262 n. 8 (1981). The court observed that "[i]f sec. 162(f) was intended to supplant the public policy doctrine, in all likelihood it would disallow deductions under sec. 165(c)(1) as well as sec. 162(a), as both involved an expenditure incurred in a trade or business." *Id.*

Though Congress, in amending Section 162, did not explicitly amend Section 165, we believe that the public policy considerations embodied in Section 162(f) are highly relevant in determining whether the payment to Raytheon was deductible under Section 165. Congress can hardly be considered to have intended to create a scheme where a payment would not pass muster under Section 162(f), but would still qualify for deduction under Section 165. It is arguable that the converse is also true, that a payment imposed in the course of a criminal prosecution that does pass muster under Section 162(f) will escape the public policy limitations of Section 165. However, we need not decide in this case whether that is so.

Reference to Section 162(f) supports our conclusion that allowing Stephens a deduction for his restitution payment would not severely and immediately frustrate public policy. Two considerations drawn from Section 162(f) and the cases construing that provision combine to support our conclusion in this case. Whether either consideration alone would suffice is a matter we need not decide.

 First, Stephens' restitution payment is primarily a remedial measure to compensate another party, not a "fine or similar

penalty," even though Stephens repaid the embezzled funds as a condition of his probation. As the Tax Court summarized in *Waldman v. Commissioner,* 88 T.C. 1384 (1987), *aff'd,* 850 F.2d 611 (9th Cir.1988), "[w]here a payment ultimately serves each of these purposes, i.e., law enforcement (nondeductible) and compensation (deductible), our task is to determine which purpose the payment was designed to serve." *Id.* at 1387 (citing *S & B Restaurant, Inc. v. Commissioner,* 73 T.C. 1226, 1232 (1980)). Compensatory payments generally "return the parties to the *status quo ante.*" *Colt Industries, Inc. v. United States,* 11 Cl.Ct. 140, 146 (1986) (penalties for violations of the Clean Water Act and Clean Air Act were not compensatory in nature, and therefore not deductible), *aff'd,* 880 F.2d 1311 (Fed.Cir.1989). Under Section 162(f), civil payments, although labelled "penalties," remain deductible if "imposed ... as a remedial measure to compensate another party...." *Huff v. Commissioner,* 80 T.C. 804, 821–22 (1983) (citing *Southern Pac. Transp. Co. v. Commissioner,* 75 T.C. 497, 652 (1980)); *see also Mason and Dixon Lines, Inc. v. United States,* 708 F.2d 1043 (6th Cir.1983) (payments for trucking violations determined by the amount of excess weight were compensatory in nature and thus deductible); *Spitz v. United States,* 432 F.Supp. 148, 149–50 (E.D.Wis.1977) (restitution payment "of an amount due and owing" deductible).

Our review of the proceedings at Stephens' sentencing convinces us that Stephens' restitution payment was more compensatory than punitive in nature. The sentencing judge, after sentencing Stephens to five years in prison and a fine on each count, reiterated her concern "that Raytheon must get its money back." She then continued,

> So, this is what I am going to do. On count two, for which you were sentenced to five years and a $5,000 fine, the Court is going to suspend the execution of that sentence, place you on probation and as a condition of your probation, the Court is going to order you to pay restitution in the sum of one million dollars. As to

> counts one, three, four, five and seven, the Court is going to let those sentences run concurrently.

This excerpt suggests that, after settling on a five-year prison term and a fine as the appropriate sentence, the sentencing judge *added* the suspended five-year term primarily to "get Raytheon its money back," and not to punish Stephens further. Because the judge suspended the consecutive five-year term on condition "that Raytheon get its money back," the "reimbursement-of-loss aspect," *Stephens,* 93 T.C. at 113, of Stephens' suspended sentence was the primary, not "incidental," *id.,* purpose of that sentence.

By contrast, in *Waldman,* in which the defendant's entire sentence was suspended on condition that he make restitution, 88 T.C. at 1386, the purpose of the restitution payment was equally compensatory and punitive in nature. Whether or not we would permit use of Section 165 on the facts of *Waldman,* Stephens' situation is distinguishable. Unlike the defendant in *Waldman,* Stephens' sentence consisted of a prison term, fines, and an order to make restitution, supporting the inference that the restitution payment was compensatory in nature, and not in the nature of a fine or penalty. Thus, Stephens' situation resembles that of the petitioners in *Mason and Dixon Lines, Inc. v. United States,* 708 F.2d 1043 (6th Cir.1983), whose fines for trucking violations were punitive and not deductible, but whose liquidated damages payments were compensatory and therefore deductible. While the fines Stephens paid as part of his punishment are obviously not deductible, we find that the restitution payment, which is compensatory in nature, is deductible.

Second, Stephens' payment was made to Raytheon, and not "to a government." The Tax Court, relying on *Waldman,* 88 T.C. at 1389, found that "the fact that the payment in question was made to a private person as restitution rather than to a Government agency in and of itself does not preclude the application of section 162(f)." *Stephens,* 93 T.C. at 113. In *Waldman,* noting that "[t]he character-

ization of a payment for purposes of section 162(f) depends on the origin of the liability giving rise to it," 88 T.C. at 1389 (citing *Bailey v. Commissioner*, 756 F.2d 44, 47 (6th Cir.1985)), the Tax Court disallowed a deduction for restitution payments made as a condition of probation because the "payments ... were ... in satisfaction of ... criminal liability to the State." *Waldman*, 88 T.C. at 1389.

To the extent that *Waldman* may be interpreted as suggesting that a restitution payment, ordered in addition to punishment and paid directly to a victim, would not be a deductible loss, we respectfully disagree. In codifying the public policy exception to deductibility of expenses under Section 162, Congress was clear and specific, limiting the exception to bribes, kickbacks and other illegal payments; a portion of treble damage payments; and fines and similar penalties paid *to a government.* This codification was intended to be "all-inclusive." S. Rep. 552 at 2311. Whether or not payment to a private party always insulates restitution from the public policy exception of Section 165, it does so on the facts of this case.

The Commissioner's reliance on *Bailey v. Commissioner*, 756 F.2d 44 (6th Cir.1985), is also unavailing. In that case, a restitution payment connected with a sentence was disallowed as a deduction even though the defendant's fine was applied as restitution in a settlement of a multidistrict class action then pending against the taxpayer's corporation and its officers. However, the payment in *Bailey* was originally imposed as a fine and, in the view of the Sixth Circuit, retained its characteristic as a penalty despite its subsequent diversion to the class members. *Id.* at 47. Here, the sentencing judge imposed fines and in addition, not in lieu thereof, ordered Stephens to repay to Raytheon the amount embezzled. To us, this is a clear indication that

the sentencing judge intended to exact restitution from Stephens.[10]

We conclude that Stephens' restitution payment was neither a fine or similar penalty, nor paid to the government. Thus, we hold that neither the public policy exception to Section 165, precluding a deduction when it would severely and immediately frustrate public policy to allow it, nor the codification of the public policy exception to deductibility of expenses pursuant to Section 162, bars deduction of Stephens' restitution payment. Accordingly, we reverse and remand to the Tax Court for further proceedings not inconsistent with this opinion.[11]

---

**10.** The Commissioner also relies in part on Treasury Regulations applicable to Section 162. As we have discussed, however, Stephens' payment was not made "to a government"; accordingly, the Treasury Regulations are not applicable. *See* 26 C.F.R. § 1.162–21(a) (Section 162(f) only applies to fines or similar penalties paid to a government).

**11.** As noted earlier, see footnote 7, *supra,* the Tax Court did not consider certain alternative grounds for disallowing the deduction. We remand for consideration of those alternative grounds.