**FULLER et al.**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

No. 4740.

United States Court of Appeals
Tenth Circuit.

April 29, 1954.

John E. Marshall, Washington, D. C., for petitioners.

S. Walter Shine, Washington, D. C. (H. Brian Holland, Ellis N. Slack and George F. Lynch, Washington, D. C., on the brief) for respondent.

Before BRATTON, MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

This is a petition for review of the decision of the Tax Court, affirming a determination of the Commissioner, that deficiencies exist in petitioners' income tax returns for the years 1948, 1949 and 1950, in the amounts of $2,634.26, $15,-573.54 and $2,973.68, respectively. During the years involved, G. E. Fuller, hereafter referred to as petitioner, was engaged in the business of buying tax-paid intoxicating beverages outside of Oklahoma and selling it at wholesale and retail to customers in and around Oklahoma City, in violation of the laws of Oklahoma. The two questions presented here are whether the Tax Court erred in sustaining the Commissioner's determination increasing gross profits of the

petitioner during the year 1949; and holding that he was not entitled to deduct as a business loss the cost of whiskey seized and confiscated by law enforcement agencies during the years 1948 and 1950.

The joint income tax return for petitioner and his wife for the year 1949 reflected gross profits of $46,865.36 on gross sales of $393,469.72, arrived at by the inventory method with opening and closing inventories at the beginning and end of the year. Pursuant to an audit by revenue agents, the Commissioner increased the gross profit for 1949 by $40,-006.73. The books and records of the petitioner were unreliable for this year, and the deficiency was determined on the basis of sales of 7,182 cases of whiskey at wholesale and retail, at a mark-up over invoice costs. In the main, the information contained in the deficiency notice was obtained from (1) somewhat illegible carbon copies of Form 52–B, required to be filed by petitioner as a wholesale liquor dealer, showing the names of buyers and number of cases purchased by them; (2) the selling price of the whiskey as disclosed by the records of buyers; and (3) an affidavit executed by the taxpayer showing his mark-up over invoice costs.[1] After arriving at the amounts of whiskey sold during 1949 to the specific purchasers shown on Form 52–B, the Commissioner determined the gross profit on such sales by applying the amount of the mark-ups shown in the taxpayer's affidavit, and also by the testimony of some of the re-

---

1. "My name is Gerald E. Fuller and I live at 1439 N. W. 39th Street, Oklahoma City, Oklahoma. During the year 1949, I was in the liquor business in Oklahoma City. During this year I sold liquor—wholesale, to Raymond Wenthold and James Wise; Frank Lewis; Virgil Owens and Leonard Wenthold; I. B. Booker and Jack Davis; R. R. Rainey; Osborne Coe; and various others. I also sold liquor—retail, which is shown as sold to myself on Treasury Department 52–B book records. I set the sales price by charging so many dollars over my invoice cost per case. This sales price

margin was as follows: $7.00 over invoice to Frank Lewis; $6.00 over invoice to R. R. Rainey; $11.00 over to Virgil and Leonard; $15.00 over to Booker and Davis; $11.00 over to Osborne Coe; $8.00 over to Raymond and James. Liquor sold to others and billed to me and sold retail was at $16.00 over invoice. During the period when no 52 records were kept, I made about $6.00 over my invoice cost.

"I have made this statement freely and voluntarily to help substantiate my sales of liquor."

tail liquor dealers as to amounts paid by them for whiskey purchased from petitioner.

It is first contended by petitioner that the Tax Court erred in admitting in evidence his affidavit, which, in some respects, conflicted with his testimony; that it "flowered from an investigative demand not authorized by law," and was not entitled to any probative effect. In that connection, it is said that the petitioner signed the affidavit because he "got tired of answering questions" and wanted them to stop bothering him; that the manner in which it was procured resulted in taxpayer's entrapment since he was not advised at the time that it would be used as evidence against him; and that no court would have compelled him to sign the affidavit against interest.

In the first place, the affidavit was admitted in evidence without objection, and its admissibility may not be challenged for the first time on appeal. Secondly, it was on cross-examination that petitioner was asked to read the affidavit, whereupon his own counsel suggested that it be put in evidence rather than have him read it, and counsel for the Commissioner then offered it in evidence. The petitioner also testified that he knew what was in it and signed it voluntarily. It certainly cannot be said that the Tax Court erred in considering and relying upon the contents of this affidavit. It was admissible as evidence of the prices received for the whiskey and also for impeachment of the petitioner as a witness.

The proof adduced before the Tax Court varied slightly from the explanatory statements made in the schedule accompanying the deficiency notice, and the taxpayer argues that this amounted to a repudiation of the formal deficiency notice, resulting in a shifting of the burden of proof to the Commissioner. The slight variance of which the taxpayer complains between the number of cases of whiskey sold and the amount of gross profit realized in particular instances resulted generally from the fact that petitioner's records were inadequate; that some of the carbon copies of his Form 52–B records were in part illegible, and were corrected by proof at the time of trial. It is sufficient to say that explanations given in a deficiency notice do not frame the issues of a tax controversy, and moreover, any inconsistency between the evidence and the deficiency notice was not prejudicial to the petitioner.

The petitioner further complains that in arriving at the gross profit derived from sales made by him to a customer, the Tax Court failed to take into account a $3 discount per case on such purchases. The agent testified, however, that the customer's books showed the amount actually paid to the petitioner for the whiskey, and that any discounts given would not affect his computations. Also, it is contended that the Court failed to take into consideration the number of cases transferred back into wholesale after they had been previously shown on Form 52–B as being transferred into retail; and that while petitioner kept his accounts and reported his income on an accrual basis, the determination of the Commissioner was erroneously based upon cash sales. It is sufficient to say that the record shows that any transfers of whiskey from retail to wholesale were taken into account, and that the sales were recorded and reported on a cash basis. In fact, petitioner and witnesses appearing on his behalf testified that only the record of cash sales was kept.

During 1948, 1949 and 1950, law enforcement agencies confiscated whiskey which had been purchased by petitioner at a cost of $9,091.50, $9,304.08 and $9,486.00 respectively, and for which he was not compensated for by insurance or otherwise. The purchase price of the liquor confiscated during 1949 was treated by the petitioner as a part of the cost of goods sold during that year; such amounts were listed separately and did not enter into the computations of the agents, which were made only from listed sales. However, for the years 1948 and

1949, the agents testified that petitioner's records for those years were so incomplete that adjustments similar to those made for 1949 could not be made, and the only adjustment for 1948 and 1950 relates to the disallowance of the cost of the confiscated whiskey as a deductible loss under Section 23(e) of the Internal Revenue Code, 26 U.S.C. § 23(e).[2] At one stage of the proceedings, the taxpayer sought to treat the amounts paid for the confiscated whiskey as cost of goods sold, and invoking Jones v. Herber, 10 Cir., 198 F.2d 544, contended for deductibility on that ground. But on appeal, he has apparently abandoned that position, as indeed he must, for the reason that none of the confiscated goods were sold, and hence § 29.22(a)–(5) of the Code can have no application. The Commissioner does not contend that petitioner is not entitled to an allowance of the cost of whiskey actually sold, where such amounts can be established.

The Tax Court held that under Section 72, Title 37 Okl.Stat.Annotated,[3] petitioner acquired no property rights of any kind in the confiscated whiskey, and that the federal public policy rule bars the allowance of the cost of such whiskey as a deductible loss under § 23(e) of the Code.

It is the general rule that losses from illegal transactions are not deductible under Section 23(e). But the ultimate question of deductibility turns on a definition of illegal transactions. On the authority of cited cases, Merton says that "A transaction is not illegal so as to make a loss arising from it nondeductible unless it is prohibited by statutory enactment, or frustrates 'sharply defined national or state policies proscribing particular types of conduct.'" 5 Mertens Law of Federal Income Taxation, § 28.84. And, in 1941, the Board of Tax Appeals in a Memorandum held that a loss deduction will not be allowed where the government has confiscated goods of a person operating an illegal business. Andres Kjar, BTA Memo.Op.Dkt. 99587 (Sept. 30, 1941). (Cited in 5 Mertens at p. 349.)

In Lilly v. Commissioner of Internal Revenue, 343 U.S. 90, 72 S.Ct. 497, 96 L.Ed. 769, opticians sought to deduct as an ordinary and necessary expense rebates to physicians whose prescriptions they filled. The Fourth Circuit held such rebates nondeductible on the grounds that they were against public policy. But the Supreme Court reversed, holding that these rebates did not stand on the same basis as expenditures which themselves violated some federal or state law, or which were incidental to such violations. The court drew a clear distinction between rebates, which were at most professionally unethical, and outlawed expenditures, which by virtue of their illegality frustrated some sharply defined national or state policy. The Lilly case cited Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171, upholding the deductibility of attorney fees paid by a duly licensed dentist in unsuccessfully resisting a fraud order by the Postmaster General. But the court was careful to point out that the fraud order was resisted in good faith and likened the expense to those incurred in the defense of a damage suit based upon malpractice, or fraud, or breach of fiduciary duty, as to which, there is no question of deductibility.

2. "§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions: * * * (e) Losses by individuals. In the case of an individual, losses sustained during the taxable year and n*t compensated for by insurance or otherwise—(1) if incurred in trade or business; or (2) if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *."

3. "§ 72. No property rights in liquors, vessels, fixtures, etc. There shall be no property rights of any kind whatsoever, in any liquors, vessels, appliances, fixtures, bars, furniture and implements kept or used for the purpose of violating any provisions of this Chapter."

From the cases, it is clear that the question of illegality to frustrate public policy is, in the last analysis, one of degree, to be determined from the peculiar facts of each case. We agree with the Tax Court that the petitioner could acquire no property rights in the confiscated whiskey, the uncompensated loss of which would be deductible under § 23(e); and to allow such deduction would clearly frustrate sharply defined public policies of Oklahoma.

The decision is affirmed.