T.C. Memo. 1996-125


UNITED STATES TAX COURT


STEPHEN D. RUDDEL, Petitioner v.
COMMISSIONER OF  INTERNAL REVENUE, Respondent


Docket No. 21262-94.          Filed March 13, 1996.


Michael R. Fabrikant, for petitioner.

Bruce G. Warner, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


LARO, Judge:  Stephen D. Ruddel petitioned the Court to redetermine respondent's determination of a $130,764 deficiency in his 1987 Federal income tax and a $32,691 addition thereto under section 6651(a)(1).  Respondent reflected this determination in a notice of deficiency issued to petitioner on August 22, 1994.

Following concessions, we must decide:

1.  Whether petitioner may deduct certain payments that he made to the Hollywood, Florida, police department as a charitable contribution.  We hold he may not.

2.  Whether petitioner may deduct those payments as an expense under section 212 or a portion of these payments as a casualty loss under section 165.  We hold he may not.

3.  Whether petitioner is entitled to a bad debt deduction with respect to two "loans".  We hold he is not.

4.  Whether petitioner is liable for an addition to his 1987 tax under section 6651(a)(1).  We hold he is.

Unless otherwise stated, section references are to the Internal Revenue Code in effect for the year in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.  Dollar amounts are rounded to the nearest dollar.

### FINDINGS OF FACT

Some facts have been stipulated and are found accordingly.  The stipulated facts and exhibits are incorporated herein by this reference.  Petitioner resided in Hollywood, Florida, when he filed his petition.

On August 28, 1986, the Hollywood, Florida, police department (Police Department), with the assistance of the United States Marshals (collectively referred to as Officers), searched petitioner's home pursuant to a valid search warrant. The Officers found 334 grams of cocaine, $7,362 in United States

currency, various gold and silver coins, and jewelry in a safe. They also uncovered drug paraphernalia, weapons, ammunition, and other miscellaneous items. These items were seized and inventoried by the Police Department.

Petitioner was arrested for cocaine trafficking. In addition to a fine of at least $100,000, the minimum mandatory period of incarceration for this offense was 5-years imprisonment. See Fla. Stat. Ann. sec. 893.135(b)2 (West 1985). Petitioner negotiated a plea agreement whereby he agreed to plead nolo contendere in exchange for a lighter sentence. In order to secure a recommendation for this lighter sentence, petitioner rendered "substantial assistance" which, among other things, required petitioner to participate in an undercover sting operation and to remit $80,000 to the Police Department, which would be used for their undercover work.

Petitioner remitted the $80,000 payment at the time of his sentencing hearing. In light of this payment, petitioner's plea, and his assistance to the authorities, the judge waived the minimum mandatory confinement and fine and sentenced petitioner to a lighter sentence of 3-1/2 years of probation.

Meanwhile, the property seized by the police was the subject of a civil forfeiture action filed in Florida State court. At a probable cause hearing that was held in this action, the presiding judge found that the police had probable cause to seize petitioner's personal property, and that the requirements had

been satisfied under Florida law for the Police Department to remain in possession of those items and to continue the forfeiture proceeding. See Fla. Stat. Ann. sec. 932.703(1) (West 1985). A final order of forfeiture was never entered in this case because petitioner, through his attorney, negotiated an agreement with the police enabling him to repurchase his property for a price of $90,900. After he repurchased the property, petitioner and the Police Department settled and dismissed the matter.

On November 4, 1992, petitioner filed his 1987 Federal income tax return. On his Schedule A, Itemized Deductions, petitioner claimed a charitable contribution deduction with respect to the amounts he paid to the Police Department.[1] Petitioner also claimed a $161,100 casualty loss for the items of personal property seized by the police. Petitioner also claimed, a bad debt deduction of $176,500, which was based on alleged loans to two individuals, Ashley Dunn (Mr. Dunn) and William Crowl (Mr. Crowl).

OPINION

---

[1] Petitioner originally reported that he transferred $152,297 of Chrysler Corp. stock to the Police Department, as a charitable contribution. Petitioner, however, never transferred any shares of Chrysler Corp. stock to the Police Department. Instead, the Chrysler Corp. stock was sold, and the proceeds were used to repurchase petitioner's personal property from the Police Department for $90,900.

The determinations reflected in respondent's notice of deficiency are presumed correct, and the burden is on petitioner to disprove these determinations. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Blohm v. Commissioner, 994 F.2d 1542, 1548-1549 (11th Cir. 1993), affg. T.C. Memo. 1991-636.

1. Charitable Contribution Deduction

Section 170(a) allows a deduction for charitable contributions, as defined in section 170(c). The phrase "charitable contribution" is generally understood to be synonymous with the term "gift." Elrod v. Commissioner, 87 T.C. 1046, 1075 (1986); Sutton v. Commissioner, 57 T.C. 239, 242 (1971). "A gift is generally defined on a voluntary transfer of property by the owner to another without consideration therefor." Osborne v. Commissioner, 87 T.C. 575, 581 (1986). The term "gift" does not include payments that proceed primarily from a legal duty or moral obligation imposed on the donor, or from the inducement of some anticipated benefit (beyond the incidental enjoyment which flows from performing a generous act). Commissioner v. Duberstein, 363 U.S. 278, 284-286 (1960); Burwell v. Commissioner, 89 T.C. 580, 589-590 (1987); DeJong v. Commissioner, 36 T.C. 896, 899 (1961), affd. 309 F.2d 373 (9th Cir. 1962). Furthermore, if the "contribution" is in fact an exchange in the form of a substantial quid pro quo, it is not a contribution to which section 170 applies. Hernandez v.

Commissioner, 490 U.S. 680 (1989); United States v. American Bar Endowment, 477 U.S. 105, 117-118 (1986); Osborne v. Commissioner, supra.

In the instant case, petitioner was charged with trafficking in cocaine. Under applicable State law, this offense carried a mandatory 5-year prison term, and at least $100,000 in fines. See Fla. Stat. Ann. sec. 893.135(b)2 (West 1985). In exchange for a lighter sentence of probation, petitioner agreed to: (1) Plead nolo contendre, (2) agreed to cooperate with the police, and (3) remit $80,000 to the Police Department. Under these circumstances, petitioner's $80,000 payment, which was made under the compulsion of his plea agreement, can hardly qualify as a charitable deduction under section 170. Instead of proceeding merely from petitioner's generous impulse, his $80,000 "contribution" was nothing more than part of the consideration given by him to avoid incarceration. See South End Italian Indep. Club v. Commissioner, 87 T.C. 168, 176 (1986); Perlmutter v. Commissioner, 45 T.C. 311 (1965); Lombardo v. Commissioner, T.C. Memo. 1985-552; cf. Commissioner v. Duberstein, supra at 285. The same is true with respect to petitioner's $90,900 payment to the Police Department also claimed as a charitable contribution. This payment was not a contribution. To the contrary, the $90,900 payment was simply the quid pro quo that petitioner paid for the return of his property lawfully seized by the Police Department. We hold for respondent on this issue.

## 2. Property Held for the Production of Income/Casualty Loss

Petitioner argues that he may nevertheless deduct the $90,000 payment under section 165(c)(3) or section 212. Section 165(a) allows taxpayers to deduct losses sustained during the taxable year which are not compensated or reimbursed by insurance or otherwise. There are limits on the deductibility of losses incurred by individuals. Under section 165(a)(3) such losses are allowable only if they are incurred in profit-seeking activity or arise from casualty or theft. Section 212 permits an individual to deduct all ordinary and necessary expenses paid or incurred for the production or collection of income, for the management, conservation, or maintenance of income-producing property, or for the determination, collection, or refund of any tax.

We are unpersuaded by petitioner's arguments. Simply put, petitioner repurchased certain personal property from the Police Department, in lieu of its forfeiture, and a deduction is not allowable for property forfeited in connection with illegal narcotics activity. See, e.g., Schad v. Commissioner, 87 T.C. 609, 623 n.4 (1986), affd. without published opinion 827 F.2d 774 (11th Cir. 1987); Holmes Enters., Inc. v. Commissioner, 69 T.C. 114, 116-117 (1977); Holt v. Commissioner, 69 T.C. 75, 79 (1977), affd. per curiam 611 F.2d 1160 (5th Cir. 1980); Fuller v. Commissioner, 20 T.C. 308 (1953), affd. 213 F.2d 102 (10th Cir. 1954); Vasta v. Commissioner, T.C. Memo. 1989-531; Mack v. Commissioner, T.C. Memo. 1989-490; Farris v.

Commissioner, T.C. Memo. 1985-346, affd. without published opinion 823 F.2d 1552 (9th Cir. 1987); see also sec. 280E (under which no deduction is allowed for any amount paid or incurred in the business of drug trafficking); secs. 1.162-1(a), and 1.212-1(p), Income Tax Regs.  The fact that petitioner settled the matter before a final order of forfeiture was entered does not change this result.  We hold for respondent on this issue.

3.  Bad Debt Deduction

Respondent disallowed all of the bad debt deduction reported on petitioner's 1987 return.  Respondent determined that petitioner did not prove that any of the amounts advanced to Messrs. Dunn or Crowl created a bona fide loan.

Section 166(d)(1)(B) provides that "where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 1 year."  Only a bona fide debt qualifies for purposes of section 166.  A bona fide debt "arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." Sec. 1.166-1(c), Income Tax Regs.  Whether the parties actually intended the transactions to be loans depends on whether the advances were made "with a reasonable expectation, belief and intention that they would be repaid".  Zimmerman v. United States, 318 F.2d 611 (9th Cir. 1963).  Intent can be established

from an examination of the facts surrounding the advances.  See
Goldstein v. Commissioner, T.C. Memo. 1980-273.

Petitioner has produced no meaningful evidence rebutting
respondent's determination.  First, there is no evidence that
Mr. Dunn or petitioner ever contemplated that petitioner would
loan Mr. Dunn money.  Rather, in 1987, Mr. Dunn forged
petitioner's signature on checks drawn upon petitioner's bank
account, and Mr. Dunn embezzled funds from petitioner's Charles
Schwab brokerage account.  Petitioner sued his bank and Charles
Schwab in 1988, settling the matter about a year later for
$40,000. Petitioner also sued Mr. Dunn to recover the embezzled
amounts.  Petitioner received monthly restitution payments from
Mr. Dunn until 1989.

Second, petitioner advanced Mr. Crowl $120,000 by checks
dated January 17, 1980.  Petitioner argues this advance was a
loan as evidenced by the fact that he wrote the word "loan" on
the memo line of the checks.  We are unpersuaded.  Petitioner's
writing the word "loan" on each check does not, in itself,
establish that the advance was in fact a loan.  We find relevant
the fact that petitioner did not enter a written loan agreement
with Mr. Crowl, nor did he execute any promissory notes, maintain
a repayment schedule for the advances, or charge interest.  We
also find relevant that petitioner did not take other meaningful
steps to enforce this purported loan.  The record shows that
Mr. Crowl, at petitioner's direction, was to invest the $120,000

in the silver market.  The record also shows that Mr. Crowl would share the profits in the event that the investment proved profitable.  Thus, it appears to us that petitioner and Mr. Crowl transacted business for the purposes of investing in the silver market and that no debtor-creditor relationship existed between them.  Nor has petitioner established that any debt owed him by Mr. Crowl became worthless during the year in issue.  We find for respondent on this issue.

4.  Delinquency Penalty

Respondent determined that petitioner is liable for an addition to tax under section 6651(a)(1).  Respondent determined that petitioner failed to file timely his 1987 Federal income tax return, and that he failed to show that his delinquency was due to reasonable cause.

Section 6651(a)(1) imposes an addition to tax for failure to file a tax return on time.  The addition to tax imposed under section 6651(a)(1) does not apply if petitioner can prove that his failure to file was:  (1) Due to reasonable cause, and (2) not due to willful neglect.  Sec. 6651(a); United States v. Boyle, 469 U.S. 241, 245 (1985); In re Stanford, 979 F.2d 1511, 1512 (11th Cir. 1992).  A failure to file timely a Federal income tax return is due to reasonable cause if the taxpayer exercised ordinary business care and prudence, and nevertheless, was unable to file the return within the prescribed time.  In re Stanford, supra at 1514; sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Willful neglect means a conscious, intentional failure or reckless indifference. <u>United States v. Boyle</u>, <u>supra</u> at 245.

In the instant case, petitioner's 1987 income tax return was due, considering extensions, on October 15, 1988. Petitioner filed his return on November 4, 1992, well after the due date. Petitioner alleges that his return was untimely due to his inability to obtain access to his residence after his arrest in order to retrieve records necessary to prepare his return. Petitioner also maintains that certain records were thrown out by the U.S. Marshals before the forfeiture sale of his building. We are not impressed with petitioner's arguments. The unavailability of records does not necessarily establish reasonable cause for failure to file timely. See <u>Electric & Neon, Inc. v. Commissioner</u>, 56 T.C. 1324, 1342-1344 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974). An individual must file a timely return based on the best information available, and he or she may then file an amended return, if necessary. <u>Estate of Vriniotis v. Commissioner</u>, 79 T.C. 298, 311 (1982). Petitioner was allowed access to his building in January 1988 to remove any records or other items left after the search. Petitioner failed to establish that specific records needed to prepare his 1987 return were unavailable, and the record herein does not indicate that he tried to obtain information from other sources. See <u>Crocker v. Commissioner</u>, 92 T.C. 899, 913 (1989) (delinquency penalty upheld

where the taxpayer did not show what documents were still needed or what actions were taken to obtain such documents).

Petitioner attempts to shift the responsibility for the untimeliness of his return to his accountant. Again, we are not persuaded. First, reliance on one's accountant to file a timely return is not "reasonable cause" for a late filing under section 6651(a)(1). United States v. Boyle, supra at 252. Second, petitioner's accountant fully explained the delinquency penalty to petitioner before the due date of the 1987 return in an effort to obtain timely information from petitioner to prepare the return. Petitioner has failed to prove that his untimely filing was due to reasonable cause and not due to willful neglect. Thus, we sustain respondent's determination that petitioner is subject to the addition to tax under section 6651(a)(1). See Waitzkin v. Commissioner, T.C. Memo. 1992-216.

To reflect the foregoing,

Decision will be

entered for respondent.