# United States Tax Court

T.C. Memo. 2022-41

MICHAEL T. SESTAK,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 17285-18.                                    Filed April 25, 2022.

————————

Michael T. Sestak, pro se.

*Joel D. McMahan* and *A. Gary Begun*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

WEILER, *Judge*: This case arises from a statutory notice of deficiency issued to petitioner for tax year 2012. The issues for decision are: (1) whether petitioner is entitled to a deduction with respect to a loss on the sale of his foreign real estate holdings as part of his criminal forfeiture with the United States and (2) whether petitioner is liable for the civil fraud penalty under section 6663.[1]

## FINDINGS OF FACT

This case was tried during the Jacksonville, Florida, remote trial session of the Court. At trial the parties stipulated most of the relevant facts, which are so found, including the bribery proceeds petitioner

———————

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code), Title 26 U.S.C., in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

**Served 04/25/22**

[*2] received during tax year 2012. Petitioner is a U.S. citizen and resided in Florida when he timely filed his Petition.

On November 15, 2000, petitioner received a bachelor of arts degree in social sciences and history from Thomas Edison State College. On January 27, 2003, he received a master of arts degree in politics from New York University, and in August 2009 he received a diploma from the U.S. War College Distance Education Program.

Petitioner was employed by the U.S. Department of State from May 2003 until March 2014 and had had previous overseas assignments in Bogota, Colombia, Madrid, Spain, and Krakow, Poland. Between August 2010 and September 2012 petitioner was employed as a consular officer by the State Department at the U.S. Consulate in Ho Chi Minh City, Vietnam. While employed as a consular officer, he served as chief of the Consulate's Nonimmigrant Visa Unit. Petitioner's responsibilities included reviewing U.S. visa applications, conducting interviews, and issuing U.S. visas to applicants.

In 2010 petitioner met a fellow U.S. citizen and resident of Vietnam named Binh Vo. Mr. Vo and petitioner devised a scheme whereby they would receive compensation in exchange for petitioner's facilitating approval of nonimmigrant visas to the United States through his position as a consular officer. Petitioner agreed to accept compensation from applicants—or their families—in exchange for approval of nonimmigrant visas to the United States.

This scheme required petitioner to use fake or code names, special email accounts, and cellphones for communication with Mr. Vo. Mr. Vo would inform petitioner in advance of the identity of each foreign national who agreed to pay money in exchange for a U.S. visa, and petitioner would then attempt to personally handle the applicant's visa application, including conducting the applicant's interview. In several instances petitioner issued visas to applicants who had been previously denied visas. From February to September 2012 petitioner approved 410 visa applications directed to him by Mr. Vo and others participating in the fraudulent scheme.

Initially, petitioner was compensated for his part in this fraudulent scheme in cash, which he stored in a safe at his residence in Vietnam. However, as the bribery proceeds continued to grow, petitioner asked Mr. Vo to maintain custody of them and to assist him in moving the funds to petitioner's bank account in Thailand. This request involved

[*3] making wire transfers of funds through intermediaries in China and elsewhere. In all petitioner received wire transfers totaling $3,227,501 to his bank account in Thailand during 2012.

In an attempt to hide his bribery proceeds from the U.S. Government, petitioner acquired real property in Thailand, and from June to December 2012 he purchased nine real estate properties for a total of approximately $3.2 million. Petitioner also arranged for his sister—who lived in the United States—to receive $150,000 of his bribery proceeds, which she used to purchase a home in Yulee, Florida.

On or about September 24, 2012, petitioner submitted signed responses to a "Questionnaire for National Security Positions (SF86 Format)" in which he falsely claimed he held no foreign financial interests and did not own, anticipate owning, or plan to purchase real estate in a foreign country. On October 19, 2012, petitioner was interviewed by two diplomatic security special agents from the State Department in the District of Columbia. During his interview, petitioner was asked by the special agents whether he was aware of any State Department officials who had unexpectedly come into a lot of money, not in line with regular salary, while he was stationed at the U.S. Consulate in Ho Chi Minh City. At the time of his interview with the special agents, petitioner gave false answers in an effort to conceal the existence of the fraudulent scheme and the proceeds derived therefrom.

In early 2013 petitioner timely filed his 2012 Form 1040, U.S. Individual Income Tax Return, reporting therein wages of $122,029 as an employee of the State Department. However, petitioner failed to report on this tax return the $3,227,501 in bribery proceeds he received. Petitioner is a well-educated man who had been employed by the State Department and worked overseas for many years. Consequently, we find that when he filed his 2012 tax return, he knew (or should have otherwise known) that he was required to recognize his bribery proceeds as income; and he intentionally did not do so to continue his participation in the fraudulent scheme.

The State Department uncovered the fraudulent scheme, and petitioner was arrested by local authorities in Thailand. Petitioner was then extradited to the United States, where he was subsequently named a defendant in a criminal complaint filed in the U.S. District Court for the District of Columbia, in a case brought by the U.S. Department of Justice. Ultimately, petitioner pleaded guilty to one count of conspiracy to commit offenses against the United States and to defraud the United

[*4] States, one count of bribery of a public official, and one count of conspiracy to engage in a monetary transaction in property derived from specified unlawful activity.

On November 1, 2013, petitioner entered into a written plea agreement with the United States. As part of the plea agreement he also executed a preliminary consent order of forfeiture imposing a forfeiture money judgment of $6,021,441 in favor of the United States, which included forfeiture of his real estate holdings in Thailand and other assets held by his co-defendants. Under his plea agreement, he agreed that his real estate holdings in Thailand represented bribery proceeds traceable to the fraudulent visa scheme, constituted property involved in the conspiracy to engage in a monetary transaction to which he pleaded guilty, and were subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1) and (6), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461. Pursuant to the written plea agreement and under the terms of the preliminary consent order of forfeiture, petitioner agreed to cooperate and voluntarily sell his real estate holdings in Thailand and to transfer the net proceeds to the United States to satisfy a portion of the money judgment entered against him.

As part of his plea agreement petitioner retained an independent appraiser and agent to appraise, market, and sell the real estate holdings in Thailand. Subject to the approval of the United States, the properties were to be sold at any price and only to unrelated third parties. It was also agreed that in the event the net proceeds from the sale of the real estate holdings in Thailand collectively exceeded $3,255,840, then 50% of the excess would be used by petitioner to pay any federal income tax due for tax years 2012 and 2013. Ultimately, petitioner sold his real estate holdings during 2013 to 2015, and in connection with the sales of his real estate holdings in Thailand and other criminal forfeitures, the United States received $1,551,134.[2]

The IRS first corresponded with petitioner by letter dated September 21, 2015, concerning the civil resolution of his criminal proceedings. The IRS audited petitioner's 2012 return, and through IRS Letter 950 (a 30-day letter) dated December 6, 2017, along with Form 4549–A, Income Tax Examination Changes, the IRS first asserted the civil fraud penalty against petitioner. Revenue Agent (RA) Janett

---

[2] During its investigation the United States identified the Yulee, Florida, property owned by petitioner's sister as being purchased using funds originating from his bribery proceeds. However, at no time did the United States move to foreclose on the Yulee, Florida, property.

**[\*5]** Ballentine, during the audit, made the initial determination to assert the civil fraud penalty under section 6663 against petitioner. RA Ballentine obtained prior written supervisory approval to assert the civil fraud penalty pursuant to section 6663 from her immediate supervisor, Patrick L. Freeman, Jr., before she formally communicated the penalty to petitioner.

OPINION

I.   *Summary of the Parties' Arguments*

At trial petitioner readily acknowledged receipt of the stipulated bribery proceeds during tax year 2012. However, he argues that the liquidation of his real estate holdings in Thailand was not a forfeiture, because the properties were located outside of the United States and, therefore, outside the jurisdiction of the U.S. court system. Petitioner contends that because the proceeds from the sales of his real estate holdings were voluntarily transferred at a loss to the United States as part of his plea agreement, he is entitled to deduct the loss from his bribery proceeds.[3] In furtherance of his argument, petitioner refers the Court to *Stephens v. Commissioner*, 905 F.2d 667, 671 (2d Cir. 1990), *rev'g on other grounds* 93 T.C. 108 (1989), and contends that his payments to the United States are appropriately classified as compensatory and are, therefore, tax deductible. Next, petitioner contends that he purchased eight of the nine real estate holdings in Thailand for investment purposes, with the plan to rent the properties as an income-generating business. Therefore, he concludes that the liquidation of his real estate holdings resulted in a substantial business loss.

Finally, petitioner disputes the civil fraud penalty determined under section 6663 and contends that he should be granted credit for those funds that he transferred to the United States as part of his plea agreement for any civil fraud penalty imposed.

In dispute of petitioner's arguments respondent contends petitioner is not entitled to a loss deduction for tax year 2012 on the liquidation of his real estate holdings in Thailand because he is precluded from deducting losses as a result of the criminal forfeiture and because the real estate sales occurred in tax years other than the tax

---

[3] Petitioner seeks a deduction against his income equal to the difference between his acquisition costs (or tax bases) in his real estate holdings, less the amount realized on the liquidation of the properties.

**[\*6]** year in which he received the bribery proceeds. Respondent further contends—assuming arguendo that he incurred a loss in the tax year at issue—that petitioner is not entitled to deduct a loss from the criminal forfeitures of property because allowance of such a deduction would frustrate established U.S. and state policy.

## II.    *Discussion*

Generally, the taxpayer bears the burden of proving that the Commissioner's determinations are erroneous. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Under section 7491(a)(1), "[i]f, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue." *See Higbee v. Commissioner*, 116 T.C. 438, 442 (2001). Petitioner has not introduced credible evidence sufficient to shift the burden of proof to respondent under section 7491(a) as to any relevant issue in dispute.

### A.    *Gross Income*

Section 61 provides that gross income from whatever source derived is subject to federal income taxation. We have found that gross income specifically includes income from illegal sources, such as bribes. *Traficant v. Commissioner*, 89 T.C. 501 (1987), *aff'd*, 884 F.2d 258 (6th Cir. 1989). Taxable income, however, means gross income minus those deductions allowed by law. I.R.C. § 63.

### B.    *Loss Deduction*

Section 165(a) allows a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." In the case of an individual, the deduction is limited to losses incurred in a trade or business or in any transaction entered into for profit or to certain theft or casualty losses. I.R.C. § 165(c). Furthermore, a deduction arising from a loss on the sale or exchange of a capital asset can be claimed only to the extent allowed by sections 1211 and 1212. I.R.C. § 165(f). A deduction for property forfeited, if allowed, falls under section 165 and not under section 162. *See, e.g., Holmes Enters., Inc. v. Commissioner*, 69 T.C. 114 (1977); *Holt v. Commissioner*, 69 T.C. 75 (1977), *aff'd per curiam without published opinion*, 611 F.2d 1160 (5th Cir. 1980).

**[\*7]** Federal courts consistently have disallowed loss deductions where the deduction would frustrate a sharply defined federal or state policy. *See, e.g., Wood v. United States*, 863 F.2d 417 (5th Cir. 1989); *United States v. Algemene Kunstzijde Unie, N.V.*, 226 F.2d 115, 119–20 (4th Cir. 1955); *Fuller v. Commissioner*, 213 F.2d 102 (10th Cir. 1954), *aff'g* 20 T.C. 308 (1953); *Blackman v. Commissioner*, 88 T.C. 677, 682–83 (1987), *aff'd without published opinion*, 867 F.2d 605 (1st Cir. 1988); *Holmes Enters.*, 69 T.C. 114. The test of "nondeductibility on public policy grounds under section 165" is the severity and immediacy of the frustration of a "sharply defined national or state policy" that would result from allowance of the deduction. *Stephens v. Commissioner*, 905 F.2d at 670; *Wood v. United States*, 863 F.2d 417.

## C.     *Trade or Business Deduction*

Taxpayers are allowed deductions for certain business and investment expenses pursuant to sections 162 and 212. Petitioner has not argued that this deduction falls under section 212 as an expense incurred in the management, conservation, or maintenance of property held for the production of income (nor could he reasonably make such arguments), so we limit our analysis here to section 162.

Section 162(a) "allow[s] as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." However, neither the Code nor the regulations provide a generally applicable definition of a "trade or business." *Commissioner v. Groetzinger*, 480 U.S. 23, 27 (1987); *McManus v. Commissioner*, T.C. Memo. 1987-457, 1987 Tax Ct. Memo LEXIS 454, at \*19, *aff'd per curiam without published opinion*, 865 F.2d 255 (4th Cir. 1988). Determining the existence of a trade or business "requires an examination of the facts in each case." *Commissioner v. Groetzinger*, 480 U.S. at 36 (quoting *Higgins v. Commissioner*, 312 U.S. 212, 217 (1941)). When examining the facts of each case to determine whether a trade or business exists, we have focused on three factors: (1) whether the taxpayer undertook the activity intending to earn a profit; (2) whether the taxpayer is regularly and actively involved in the activity; and (3) whether the taxpayer's activity has actually commenced. *E.g.*, *Weaver v. Commissioner*, T.C. Memo. 2004-108, 2004 WL 938293, at \*6; *McManus*, 1987 Tax Ct. Memo LEXIS 454, at \*20.

**[\*8]**  D.   *Civil Tax Fraud*

"If any part of any underpayment of tax required to be shown on a return is due to fraud," section 6663(a) imposes a penalty of 75% of the portion of the underpayment attributable to fraud. The Commissioner has the burden of proving fraud, and he must prove it by clear and convincing evidence. I.R.C. § 7454(a); Rule 142(b). To sustain his burden, the Commissioner must establish two elements: (1) that there was an underpayment of tax for each year at issue and (2) that at least some portion of the underpayment for each year was due to fraud. *Hebrank v. Commissioner*, 81 T.C. 640, 642 (1983).

Section 6751(b)(1) provides that "[n]o penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." As a threshold matter, the Commissioner must show compliance with section 6751(b)(1). *See Chai v. Commissioner*, 851 F.3d 190, 221 (2d Cir. 2017) ("[C]ompliance with § 6751(b) is part of the Commissioner's burden of production."), *aff'g in part, rev'g in part* T.C. Memo. 2015-42. Under section 7491(c), the Commissioner carries "the burden of production in any court proceeding with respect to the liability of any individual for any penalty." This burden requires the Commissioner to come forward with sufficient evidence indicating that imposition of the penalty is appropriate. *See Higbee*, 116 T.C. at 446. The Commissioner's burden of production under section 7491(c) includes establishing compliance with section 6751(b)(1). *See Chai v. Commissioner*, 851 F.3d at 217, 221–22; *Graev v. Commissioner*, 149 T.C. 485 (2017), *supplementing and overruling in part* 147 T.C. 460 (2016).

Before trial, the parties stipulated that respondent has met his initial burden of production under section 7491(c) with respect to the requirements under section 6751(b)(1) because RA Ballentine obtained written supervisory approval of the penalty being asserted under section 6663 before the penalty determination was formally communicated to petitioner. On the basis of the evidence before the Court, we accept this stipulation as true and find respondent has met his initial burden of production under section 7491(c) with respect to the requirements of section 6751(b)(1).

[*9] III.    *Analysis of Petitioner's Arguments*

It is undisputed that petitioner's real estate holdings in Thailand were sold at a loss, meaning the funds received were less than the amount he paid to acquire the properties. The legal question to be resolved by the Court is whether petitioner is entitled to a tax deduction for the financial loss against his bribery proceeds received for the tax year in question.

Petitioner pleaded guilty to one count of conspiracy to commit offenses against the United States and to defraud the United States and one count of bribery of a public official.[4] The criminal forfeiture of petitioner's funds was made pursuant to 18 U.S.C. § 981, and the district court ordered him to forfeit to the United States "any property, real or personal, which constitutes or is derived from proceeds traceable to the offense of Conspiracy to Commit Bribery, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)."

In *Stephens* the taxpayer was convicted and sentenced in a scheme to defraud Raytheon, a Delaware corporation, of which he was a principal owner. As part of his sentence, the district court ordered the taxpayer to make restitution of $1 million to Raytheon. As part of his settlement agreement with Raytheon, and in connection with two civil actions, the taxpayer turned over $530,000 in cash held in his name at a Bermuda bank and signed a promissory note for $470,000. The taxpayer later claimed as a tax deduction the $530,000 in restitution. Although this Court denied the deduction, the Court of Appeals for the Second Circuit reversed and remanded the case, determining the taxpayer was entitled to a deduction under the circumstances of his restitution order. *Stephens v. Commissioner*, 905 F.2d at 674 ("Stephens' restitution payment was neither a fine or similar penalty, nor paid to the government. Thus, we hold that neither the public policy exception to [s]ection 165, precluding a deduction when it would severely and immediately frustrate public policy to allow it, nor the codification of the

---

[4] We note that Congress does not concern itself with the lawfulness of the income it taxes; income from criminal enterprises is taxed at the same rate. And it is true that taxpayers, in some instances, have been allowed deductions against gross income otherwise illegal under state or federal laws. *See Commissioner v. Sullivan*, 356 U.S. 27 (1958) (allowing deductions for rent and wages paid to the operator of an illegal gambling enterprise).

**[\*10]** public policy exception to deductibility of expenses pursuant to [s]ection 162, bars deduction of Stephens' restitution payment.").

In this case there was no restitution made by petitioner; rather the proceeds derived from his bribery scheme with Mr. Vo were subject to a court-ordered forfeiture. Consequently, petitioner's reliance upon *Stephens* is misplaced since the case is distinguishable. To allow petitioner a deduction for losses arising out of forfeited proceeds obtained through illegal activities would undermine public policy by permitting a portion of the forfeiture to be borne by the Government, thus taking the "sting" out of the forfeiture. *See Tank Truck Rentals, Inc. v. Commissioner*, 356 U.S. 30, 35 (1958); *Wood*, 863 F.2d at 422; *Holt*, 69 T.C. at 81; *Farris v. Commissioner*, T.C. Memo. 1985-346, *aff'd without published opinion*, 823 F.2d 1552 (9th Cir. 1987). In accordance with these controlling precedents, petitioner is not entitled to a loss deduction under section 165 for the proceeds (including the proceeds from the real estate sales) that he later forfeited pursuant to the forfeiture agreement with the United States.

Petitioner seeks to draw a distinction between his situation and those prior cases denying deductions for forfeitures on the ground that his plea agreement called for voluntary sales and forfeiture of funds along with profit sharing for tax purposes, which deviates from the norm in punitive actions and indicates a more compensatory approach to the liquidation of his real estate holdings in Thailand. We think petitioner's distinctions are unpersuasive considering the potential angles, as discussed below.

In *Lilly v. Commissioner*, 343 U.S. 90 (1952), opticians sought to deduct payments that they made to eye doctors as ordinary and necessary business expenses. These payments were made pursuant to agreements that reflected an established and widespread practice in that industry, whereby the eye doctors agreed to recommend certain opticians to their patients and the opticians agreed to pay those referring eye doctors one-third of the retail sale prices that they received for the eyeglasses that they sold. The Court of Appeals for the Fourth Circuit held such payments were nondeductible on the grounds that they were against public policy. The Supreme Court reversed, however, holding that the payments did not stand on the same basis as expenditures that violated some federal or state law or that were incidental to such violations. The Supreme Court drew a distinction between these payments, which were at most professionally unethical,

**[*11]** from those of outlawed expenditures, which, by virtue of their illegality, frustrate federal or state policy.

Petitioner's proceeds from his fraudulent scheme are not akin to the payments in dispute in *Lilly*. The moneys petitioner forfeited were admittedly the essence of his illegal venture. The forfeiture was incidental to his violation of federal laws. Therefore, the holding in *Lilly* does not support petitioner's argument.

In *Commissioner v. Sullivan*, 356 U.S. 27, the Supreme Court held that an illegal gambling enterprise was a business for federal tax purposes and that deductions for ordinary and necessary business expenses involved in operating the enterprise were allowable. The Supreme Court reasoned that to deny such deductions would result in taxing the gross receipts of the business rather than its net income. In *Commissioner v. Tellier*, 383 U.S. 687 (1966), the taxpayer sought a deduction for legal fees incurred in the unsuccessful defense of a criminal prosecution relating to his business. The Commissioner conceded that the fees were ordinary and necessary business expenses. The only question was whether the allowance of a deduction would frustrate public policy. The Supreme Court held that no public policy was frustrated by allowing these legal fees to be deducted as ordinary and necessary business expenses.

*Sullivan* and *Tellier* stand for the proposition that a taxpayer may be allowed to deduct legitimate (i.e., ordinary and necessary) business expenses in the operation of an illegitimate enterprise. That concept is not determinative in our analysis of this case because we are dealing with a forfeiture that (as discussed above) does not qualify as an ordinary and necessary business expense under section 162.[5] Furthermore, the allowance of a loss deduction in this case would undermine the impact of the sharply defined policy against bribery of a government official. Accordingly, *Sullivan* and *Tellier* are inapposite to the case here.

Accordingly, we will sustain respondent's disallowance of petitioner's loss deduction claimed with respect to his criminal

---

[5] It is unclear whether petitioner claims his real estate activity was a separate trade or business, or, as it seems, he is claiming that his real estate activity was part of his illegitimate bribery business activity. While petitioner does not consider the transfer of the sales proceeds to the government to be a forfeiture, the preliminary consent order and our findings which should be with respect thereto reflect otherwise.

**[\*12]** forfeiture. Next we will turn to the civil fraud penalty determined against petitioner under section 6663.

The Commissioner must prove an underpayment of tax in support of the fraud penalty. To sustain his burden, the Commissioner need not prove the precise amount of the underpayment attributable to fraud, but only that a part of the underpayment is attributable to fraud. *Estate of Beck v. Commissioner*, 56 T.C. 297, 363–64 (1971). When the allegations of fraud are intertwined with unreported income and indirectly reconstructed income, as they are in this case, the Commissioner may prove an underpayment by proving a likely source of the unreported income. *Id.* at 361.

As previously discussed, respondent has shown sources of unreported income to petitioner, and petitioner has failed to show that the receipts were offset by deductible costs or expenses. Furthermore petitioner agrees that he failed to report his bribery proceeds for 2012. As a result, it is established by clear and convincing evidence that he has an underpayment for the 2012 tax year.

We now turn to the second element of the penalty, fraudulent intent. Fraud is intentional wrongdoing designed to evade tax believed to be owing. *Neely v. Commissioner*, 116 T.C. 79, 86 (2001). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. *Estate of Pittard v. Commissioner*, 69 T.C. 391, 400 (1977). Fraud is not to be presumed, nor should a finding of fraudulent intent be based upon mere suspicion. *Petzoldt v. Commissioner*, 92 T.C. 661, 699–700 (1989). But because direct proof of a taxpayer's intent is rarely available, fraudulent intent may be established by circumstantial evidence. *Id.* at 699. The Commissioner satisfies his burden of proof by showing that "the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes." *Parks v. Commissioner*, 94 T.C. 654, 661 (1990). The taxpayer's entire course of conduct may be examined to establish the requisite intent, and an intent to mislead may be inferred from a pattern of conduct. *Webb v. Commissioner*, 394 F.2d 366, 379 (5th Cir. 1968), *aff'g* T.C. Memo. 1966-81; *Stone v. Commissioner*, 56 T.C. 213, 224 (1971).

Circumstances that may indicate fraudulent intent, often called "badges of fraud," include but are not limited to: (1) understating income, (2) keeping inadequate records, (3) giving implausible or inconsistent explanations of behavior, (4) concealing income or assets,

**[\*13]** (5) failing to cooperate with tax authorities, (6) engaging in illegal activities, (7) supplying incomplete or misleading information to a tax return preparer, (8) providing testimony that lacks credibility, (9) filing false documents (including false tax returns), (10) failing to file tax returns, and (11) dealing in cash. *See Schiff v. United States*, 919 F.2d 830, 833 (2d Cir. 1990); *Bradford v. Commissioner*, 796 F.2d 303, 307–08 (9th Cir. 1986), *aff'g* T.C. Memo. 1984-601; *Parks*, 94 T.C. at 664–65; *Recklitis v. Commissioner*, 91 T.C. 874, 910 (1988); *Morse v. Commissioner*, T.C. Memo. 2003-332, 86 T.C.M. (CCH) 673, 675, *aff'd*, 419 F.3d 829 (8th Cir. 2005). No single factor is dispositive, but the existence of several factors is "persuasive circumstantial evidence of fraud." *Niedringhaus v.* Commissioner, 99 T.C. 202, 211 (1992); *Petzoldt*, 92 T.C. at 700.

According to the record before the Court petitioner's prior criminal conviction demonstrates his intent to mislead, conceal, or otherwise interfere with the IRS's ability to assess and collect his federal income tax.[6] Petitioner was employed as a Consular Officer and served as chief of the Nonimmigrant Visa Unit at the U.S. Consulate in Ho Chi Minh City, an influential position within the State Department, which he illegally used for personal financial gain. Furthermore, his use of co-conspirators to transfer funds through foreign bank accounts in China and subsequent purchase of real estate holdings in Thailand reflect petitioner's sophisticated effort to conceal and otherwise prevent the collection of tax.

We find that respondent has shown that five "badges of fraud" exist in this case, including understating income, concealing income or assets, engaging in illegal activities, dealing in cash, and filing false documents, including a false tax return. These factors favor a finding of fraud. Petitioner has provided evidence of his cooperation with U.S. authorities, including the IRS; however, this evidence is only a single factor weighing against fraudulent intent.

Furthermore, petitioner does not dispute that he intended to evade tax by not reporting his bribery proceeds, but he tries to offset the penalty solely through a reduction of the underpayment amount.

---

[6] Convictions for crimes involving perjury, deceit, breach of fiduciary duty, and concealment of criminal proceeds are highly probative of the intent to evade tax. *See Wright v. Commissioner*, T.C. Memo. 2000-336, 2000 WL 1635407, at \*6. Admission of facts showing fraudulent behavior in a criminal plea agreement is also relevant to finding fraudulent intent. *See Duncan & Assocs. v. Commissioner*, T.C. Memo. 2003-158, 2003 WL 21233527, at \*6.

**[*14]** Considering the evidence before the Court, we have no doubt that petitioner—being a well-educated individual employed by the State Department and having worked overseas for most of his career—knew that the bribes were in fact taxable income to him, which he failed to report with the intent, at least in part, to evade tax.

Petitioner asserted that he is not liable for the fraud penalty because while incarcerated he directed his tax preparer to file an amended return for 2012, reporting his bribery proceeds as income. Petitioner is mistaken on this point. Fraud occurs upon the filing of a false return with the requisite fraudulent intent, and that conduct cannot be subsequently purged through the filing of an amended return. *See Badaracco v. Commissioner*, 464 U.S. 386, 394 (1984). Furthermore, respondent furnished a Certification of Lack of Record which showed that no amended tax return for 2012 has been received from petitioner.

Petitioner's activities with regard to the receipt of bribery proceeds and his attempts to hide the activities associated therewith are "badges of fraud" that clearly and convincingly indicate the civil fraud penalty under section 6663 applies for the tax year at issue. Accordingly, we will sustain respondent's determination of the fraud penalty in this case.

We have considered all of the arguments that petitioner has made, and to the extent they are not addressed herein, we find the arguments to be moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered for respondent.*